IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
August 6, 2026

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TIFFANY S.,**
**Petitioner Below, Petitioner**

**v.) No. 26-ICA-20**    (Fam. Ct. Wyoming Cnty. Case No. FC-55-2015-D-127)

**ROBERT S.,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Tiffany S.[1] ("Mother") appeals the Family Court of Wyoming County's December 18, 2025, final order modifying the parties' previous parenting plan. Respondent Robert S. ("Father") filed a response in support of the family court's order.[2] Mother did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

The parties are the parents of one child who was born in 2011. While the action originally commenced in 2015, our recital of relevant facts is based on the limited appendix record provided to this Court on appeal.

On June 4, 2024, the family court entered an order incorporating the parties' agreed modified parenting plan. The court set forth the parties' agreement, ordering that the child would continue to primarily reside with Mother, and Father would receive parenting time on alternating weekends. Father would have parenting time every other Friday from 6:00 p.m. to Sunday at 6:00 p.m. during the school year and every other Wednesday from 6:00 p.m. to Sunday at 6:00 p.m. during summer break. The court explained that "[f]or the summer of 2024, the [c]hild's periods of time with his Father shall be June 12-16, June 26-30, etc." Mother was required to transport the child to the paternal grandparents' home

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last names by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] The parties are self-represented.

1

when it was Father's parenting time. Depending on Mother's work schedule, Father was to either bring the child to Mother's home or meet her at a gas station at the end of his parenting time. The court also incorporated the parties' holiday and vacation schedules in this order.

At some point thereafter, Mother filed a petition for a domestic violence protective order ("DVPO") against the child's stepmother on behalf of the child and also filed a petition to modify the June 4, 2024, parenting plan, purportedly alleging that the child was mature enough to express a firm and reasonable preference regarding custody.[3] On November 18, 2025, the family court held a final hearing on Mother's petitions.[4] The family court conducted the DVPO hearing first[5] and immediately thereafter conducted the hearing on her petition to modify the 2024 parenting plan.

A review of the video record of the November 18, 2025, hearing[6] on Mother's petition to modify the 2024 parenting plan indicates that the parties and the family court all agreed that the child, who was then two weeks away from turning fourteen, was sufficiently mature to express a firm and reasonable custodial preference. Mother testified that the child was afraid of the stepmother but loved his Father and enjoyed visiting with Father as long as it was at the paternal grandparents' house. The court informed the parties that pursuant to the court's in-camera interview of the child, the child loved both parents very much; however, contrary to Mother's assertion that the child was fearful of stepmother, the child was not afraid of stepmother. Rather, the court relayed that the child

---

[3] Mother's petition for modification of the 2024 parenting plan was not provided to this Court on appeal.

[4] Mother was represented by counsel at this stage of the proceeding.

[5] According to the record, Mother's petition for a DVPO alleged that during Father's parenting time, stepmother left a sex toy where the child sleeps when he stays with Father. Father was not home at the time the child discovered the sex toy and only stepmother was in the house. Mother alleged that stepmother's act of leaving the toy on the couch where the child sleeps during Father's parenting time was completely inappropriate behavior that caused the child to be fearful of stepmother, and that he no longer wished to be around stepmother. This incident caused Child Protective Services ("CPS") to investigate, and the CPS worker testified at the DVPO hearing.

[6] Relevant to this appeal, during the hearing, the family court asked Father if he had submitted his updated financial disclosures as previously ordered. Father stated that he forgot. Nonetheless, upon the court's directive, Father appeared to fill out the necessary documents and provide them to the court during the hearing.

was uncomfortable around her. Contrary to Father's assertions that it was only Mother who disliked stepmother, the court informed Father that based on the court's in-camera interview, the child did not like the stepmother and did not like being around her. The court told the parties that the child enjoyed spending time with Father and wanted to continue spending time with Father but did not want stepmother around during Father's parenting time. The court, after hearing testimony and argument, instructed Mother's attorney to prepare the order and instructed the attorney what findings and rulings to put in the order.

The family court's oral findings and rulings that were to be included in the written order were as follows: although the child is sufficiently mature to express a firm and reasonable preference, the child is ordered to see his Father every other weekend and follow the same holiday schedule until September 1, 2026; however, it was in the child's discretion whether to visit Father at the paternal grandparents' house or at Father's house, and if the child chose grandparents' house and Father "threw a fit," then the child did not have to visit Father anymore and would have complete discretion; it was the child's discretion whether he wanted to be around the stepmother at Father's house; after September 1, 2026, parenting time was in the complete discretion of the child and if he did not want to visit Father anymore then he did not have to; the drop-off/pick-up order would be the same; that unless the child agreed otherwise, the stepmother was only allowed to be around the child during holidays if there was a crowd present; and that after considering the history of the case, the court had concerns that Mother had coached the child.

On December 18, 2025, the family court entered the order on Mother's petition to modify, which was prepared by Mother's counsel.[7] The order found that the child was mature enough and on the cusp of being old enough to indicate a preference relating to parenting time pursuant to West Virginia Code § 48-9-402(b)(3) and (4). However, the court ordered the parties to continue following the June 4, 2024, parenting schedule with one exception: the child should "have visits where he feels safe and comfortable," and that it was in the child's discretion whether he wished to visit Father at the paternal grandparents' home or at Father's home, which would "remain in effect through September 1, 2026." The order explained that after conducting a separate hearing on Mother's petition for a DVPO against the stepmother, the child was not necessarily afraid of the stepmother. Rather, the court found that the child does not like the stepmother and feels uncomfortable around her. The court permitted the stepmother to be around the child during holiday and birthday dinners so long as a crowd is present. The court ordered that "for the continued visitation with the child by the [F]ather, pick-up and drop-off of the child will continue to be at the paternal grandparents' home" and that prior orders not affected by the December 18, 2025, order shall continue to remain in full force and effect. It is from this order that Mother now appeals.

---

[7] The child had turned fourteen when the family court's December 18, 2025, order was entered.

3

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Mother's brief contains twelve assignments of error but no "headings that correspond with the assignments of error" in her argument section pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.[8] As such, it was a challenge to understand some of Mother's various contentions because of her "lengthy, free-flowing argument" section that failed to focus on any specific assignment of error. However, as has been our past practice, we will be mindful that "[w]hen a litigant chooses to represent himself, it is the duty of the [court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Joseph B. v. Candie G.*, No. 24-ICA-425, 2025 WL 1604532, at *2 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (citing *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986)). Therefore, we have examined the brief, the recorded hearing, and the appendix record provided, and will address Mother's arguments to the best extent possible.[9] Because some of her

---

[8] Clearly defining the issues presented averts the danger that "the Court and respondent may discern different issues from a petitioner's lengthy, free-flowing argument." *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020) (memorandum decision). Rule 10(c)(7) also requires the separate argument section to include "citations that pinpoint when and how the issues . . . were presented to the [family court]." This Court may disregard errors that are not adequately supported by specific references to the record. *Id*.

[9] Mother also makes numerous arguments pertaining to issues raised in the domestic violence action. She essentially argues that the custody issue would have had the proper outcome if the family court had not failed to consider certain evidence and used its authority to ensure that certain functions were performed in the domestic violence proceeding. However, we decline to address those arguments because this Court lacks jurisdiction over "final orders issued by a family court in any domestic violence proceeding[.]" W. Va. Code § 51-11-4(b)(2) (2024). Although the domestic violence issue led to the custody issue here, this Court has held that consolidation by a lower court of a matter that this Court does not have jurisdiction over with a matter over which this Court

arguments are similar, we will consolidate them and address them out of order for efficiency and clarity of our review.

First, Mother argues that the family court abused its discretion by disregarding the express wishes of a nearly fourteen-year-old child concerning his visitation and safety. In support of her argument, she contends that despite finding that the child was sufficiently mature to express a firm and reasonable custodial preference, the court refused to adopt the child's preference of not wanting to have visitation with Father if the stepmother is present. We find no merit in this argument.

West Virginia Code § 48-9-402 (2022) permits family courts to modify parenting plans without the showing of a change in circumstances if its in the child's best interest and "[i]s necessary to accommodate the reasonable and firm preferences of a child who is under the age of 14 and, in the discretion of the court, is sufficiently matured that he or she can intelligently express a voluntary preference."

Here, the family court held an in-camera interview of the child where the child told the court his preference and explained his reasoning. Specifically, the court informed the parties that the child wanted to continue spending time with Father, but that he did not want the stepmother around during his visits because he did not like the stepmother and felt uncomfortable around her. As such, the court modified the parenting plan to accommodate the child's firm and reasonable preference. While keeping Father's existing parenting time intact, the court gave the child complete discretion over whether he wished to exercise Father's parenting time at the grandparents' house or at Father's house. As such, we are unable to find that the family court clearly erred or abused its discretion by modifying the parenting plan to accommodate the child's preference.

For Mother's next argument, she asserts that the family court's accusation and finding that it had concerns about her coaching the child was clearly erroneous and unsubstantiated by the record. Mother contends that there was no evidence or credibility determination to support this finding and asserts that the stepmother weaponized this accusation by publicly posting statements about the finding on social media the day after the modification hearing. We are unpersuaded by this argument. While the family court

---

does have jurisdiction does not bestow appellate jurisdiction over both matters. *See SWN Prod. Co., LLC v. City of Weirton Bd. of Zoning Appeals*, No. 23-ICA-405, 2024 WL 1730044, at *3 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision); *see also Shawn D. v. Cynthia H.*, No. 24-ICA-145, 2024 WL 5003364, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision).

verbally instructed Mother's attorney to include this finding, it was omitted from the court's order. Thus, there is no basis in law to grant Mother relief on this issue.

Next, Mother argues that the family court erred by allowing the hearing to proceed despite Father's failure to submit his financial affidavit as previously ordered by the court. Upon review, this issue was not properly before the court as the matter was scheduled for a hearing on Mother's petition to modify custody. While Father was previously ordered to file certain financial documentation and failed to do so, there is no record that Mother filed a petition or otherwise regarding her grievance with Father's noncompliance. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). As such, we decline to consider this issue.

Mother next maintains that the family court's decision was influenced by Father's hostile behavior during the hearing. Assuming Mother is arguing that Father's conduct during the hearing caused judicial bias, we have previously explained that "generally, a party contending [judicial] bias would seek disqualification of the offending judge, pursuant to Rule 58 of the Rules of Practice and Procedure for Family Court." *See Katelin C. v. Donovan C.*, No. 24-ICA-473, 2025 WL 2240293, at *3 (W. Va. Ct. App. Aug. 6, 2025) (memorandum decision). Thus, we decline to address this issue as "decisions regarding disqualification of judges are made by the Chief Justice of the SCAWV and are not the province of this Court." *In re C.S.*, 251 W. Va. 147, 151-52, 909 S.E.2d 819, 823-24 (2024). Moreover, Mother failed to establish that her due process rights were violated due to the alleged bias. *See Xerxes R. v. Richard P.*, No. 24-ICA-76, 2024 WL 5003524 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (holding that the petitioner must demonstrate error on the basis of bias or prejudice constituting a violation of a party's due process rights).

Next, Mother argues that the family court's final order failed to reflect material rulings and statements, which resulted in a contradictory, inconsistent order that is unclear. In support of her argument, Mother contends that the order simultaneously restricts and authorizes the stepmother's presence during Father's parenting time with the child without explanation, resulting in an arbitrary order. Specifically, she asserts that in one section, the order gives the child discretion to visit at the grandparents' home or at Father's home, yet in another section, the order permits the stepmother to be around the child during holidays or birthdays when a crowd is present. We find no merit in this argument.

The family court's order gives the child discretion to visit with Father at Father's house or at the grandparents' house, wherever he feels safe and comfortable. The order permits the stepmother to be around the child only during birthday dinners and holidays if there is a crowd present. It is clear that the family court considered the child's safety by analyzing how the number of people present would be limited during Father's parenting time that occurs every other weekend, as opposed to the likelihood that a lot of people

6

would be present during holidays and birthday dinners. Further, "[i]t is clear that where a [lower] court's written order conflicts with its oral statement, the written order controls." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006). Therefore, "we are left to decide this case within the parameters of the [lower] court's order." *State v. White,* 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992). Therefore, based on our review of the record and Mother's arguments on appeal, we cannot conclude that the family court abused its discretion or clearly erred.

Next, Mother argues that her rights were violated because she was required to sign a nondisclosure agreement restricting her speech before she was granted access to the recorded hearing in the matter. "[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal." *Konchesky v. S.J. Groves & Sons Co., Inc.,* 148 W. Va. 411, 414, 135 S.E.2d 299, 302 (1964). Here, the record reveals that the issue Mother complains of on appeal occurred after the court's hearing on her petition to modify. As this issue was never brought before the family court by petition or otherwise, we decline to consider this argument.

Lastly, Mother argues that the family court abused its discretion by unreasonably delaying the entry of the final order. Specifically, she asserts she was prejudiced because the court did not enter the order until thirty days after the hearing. We find no merit in this argument. Although the limited record before us does not illustrate when the order was presented to the family court for review, we note that it was Mother's counsel who drafted and submitted the order to the family court for entry. While Rule 22 of the West Virginia Rules of Practice and Procedure for Family Court requires orders to be entered within twenty days of final hearings, this Court previously found no error in a family court's delayed entry of a final order when the appellant "did not present any evidence that she was prejudiced by the family court's slight delay in entering the final order or explain how the delay prevented her from [pursuing] this appeal." *McLaughlin v. Cole*, No. 24-ICA-509, 2025 WL 2238966, at *3 (W. Va. Ct. App. Aug. 6, 2025) (memorandum decision); *see also William M. v. W. Va. Bureau of Child Support Enf't*, No. 20-0620, 2021 WL 3833867, at *3 (W. Va. Aug. 27, 2021) (memorandum decision) (finding alleged error by family court harmless where petitioners failed to show that they suffered prejudice or had their substantial rights adversely affected by alleged error). Likewise, Mother failed to demonstrate how she was prejudiced by the family court's slight delay of the order's entry or how the delay prevented her from pursuing this appeal. Thus, we find no reversible error.

Based on the foregoing, we are unable to find that the family court clearly erred or abused its discretion and affirm the family court's December 18, 2025, modification order.

Accordingly, we affirm.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White